IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FABIO CAPARRA,**<br>　　　　　　　**Plaintiff,**<br>　v.<br>**MAGGIANO'S INC.** *et al.*,<br>　　　　　　　**Defendants.** | **CIVIL ACTION**<br>**NO. 14-05722** |

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　　　　　**SEPTEMBER 1, 2015**
<u>**MEMORANDUM**</u>

　　　　Plaintiff Fabio Caparra ("Caparra") sued Maggiano's, Inc. ("Maggiano's), Brinker International, Inc. ("Brinker International"), and Brinker International Payroll Company, L.P. ("Brinker Payroll") (collectively referred to as "Defendants" throughout the complaint), alleging that Defendants violated the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA") by terminating him while he was on medical leave.  Approximately ten months before his termination, Caparra signed an agreement to arbitrate with Brinker Payroll.  Brinker Payroll now seeks to enforce this agreement and compel Caparra to arbitrate his claims.  Maggiano's and Brinker International join the motion to compel and also move to dismiss.[1]  For the reasons that follow, the Court will compel arbitration and stay these proceedings while the parties arbitrate Caparra's claims.

---

[1]　　Brinker International and Maggiano's contend that they are improperly named defendants because neither employed Caparra. (*See, e.g.*, Defs.' Reply 2-4, ECF No. 19.) They thus argue that they should be dismissed. (*See, e.g.*, Defs.' Mot. Dismiss 8, ECF No. 16.) However, a challenge to the merits of Caparra's claims must be decided by the arbitrator. *PaineWebber Inc. v. Hartman*, 921 F.2d 507, 511 (3d Cir. 1990) ("If . . . the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute."), *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85 (2002).

I.     **Background**

In 2004, Defendants hired Caparra as a sous chef. (Compl. ¶ 23, ECF No. 1.) Over the next six years, Caparra received several promotions. In December 2010, he was promoted to Executive Chef–Managing Partner, making him one of the highest-level managers at his location. (*Id.*) On April 27, 2012, Caparra signed an agreement to arbitrate with Brinker Payroll. (Caparra Dep. 94:17-95:11, Apr. 14, 2015, Pl.'s Opp'n Mot. Dismiss Ex. 11.) In November 2012, Caparra informed Defendants that he needed to take medical leave to undergo surgery for acute spinal stenosis. (Compl. ¶ 28.) Caparra began leave on January 21, 2013—the same day he underwent back surgery. (*Id.* ¶ 29.) On February 27, 2013, Caparra sent Defendants a doctor's note stating that he was cleared to return to work if Defendants provided certain accommodations. (*Id.* ¶ 36.) Defendants received the doctor's note, but did not discuss Caparra's requested accommodations. (*Id.* ¶ 37.) The next day, while Caparra remained on leave, his supervisor David Kososki terminated him. (*Id.* ¶ 39.) Caparra later learned that he had been terminated for "misconduct and behavior deemed detrimental," but was provided no further explanation. (*Id.* ¶ 41.) Caparra contends that the Defendants interfered with his rights under the FMLA, and retaliated against him for exercising those rights by terminating him while he was out on leave. Caparra avers that this same incident violated the ADA and the PHRA.

On December 8, 2014, Defendants filed a motion to dismiss and to compel arbitration. (ECF No. 6.) In response, Plaintiff argued *inter alia* that the arbitration agreement was unconscionable. (*See* ECF No. 10.) Concluding that it was unable to rule on Defendants' motion in the absence of a fuller evidentiary record, the Court denied the motion without prejudice and ordered the parties to conduct discovery into Plaintiff's unconscionability arguments. (*See* Order, ECF No. 15.)

Discovery revealed the following pertinent facts.[2]  On April 27, 2012, Caparra learned that all "teammates" were being asked to sign a stand-alone arbitration agreement.  (Caparra Dep. 94:23-95:5; *see also id.* at 95:17-95:21.)  Caparra was told that he needed to sign the document the day he received it, and he did so after learning that his superiors had also signed the document.  (*Id.*; *see also id.* at 98:13-99:22.)  Caparra asked to call his wife before signing the document, and he was permitted to make the call.  (*Id.* at 105:23-106:1.)  Caparra did not, however, ask any questions about the document nor did he read it before signing it.  (*Id.* at 101:4-103:2; 110:9-110:21.)  Rather, he signed the document in reliance on his superiors' assurances that they signed the document, his belief that the document was innocuous, and in an effort to encourage his kitchen staff to sign the document.  (*Id.* at 92:3-93:22.)

The arbitration agreement[3] (the "Arbitration Agreement") that Caparra signed on April 27, 2012 states the following:

> Brinker Payroll International Company, L.P. ("Brinker") makes available certain internal procedures for amicably resolving any complaints or disputes you have relating to your employment.  However, if you are unable to resolve any such complaints or disputes to your satisfaction internally, Brinker has provided for the resolution of all disputes that arise between you and Brinker through formal, mandatory arbitration before a neutral arbitrator.
>
> Because of, among other things, the delay and expense which result from the use of the court systems, *any legal or equitable*

---

[2]   Most of the evidence submitted by the parties in support of their positions pertains to whether the arbitration agreement is procedurally, as opposed to substantively, unconscionable.  For reasons discussed *infra*, the Court does not address the procedural unconscionability issue.  The Court accordingly does not recount those facts in detail here.

[3]   At the time of his hire in 2004, Caparra agreed to be bound by a similar arbitration agreement.  (*See* Defs.' Mot. Dismiss Ex. F; Pl.'s Opp'n Mot. Dismiss Ex. 10, ECF No. 18.)  As Caparra points out, the 2004 agreement obligated him to arbitrate disputes "arising out of or related to [his] compensation, employment or termination of employment with Brinker International or its related companies."  (Defs.' Mot. Dismiss Ex. E.)  The 2012 agreement does not include this "related companies" language.  Caparra contends that this distinction means that he cannot be compelled to arbitrate his claims against Defendants Brinker International and Maggiano's.  However, as discussed *infra*, the absence of this language does not permit Caparra to avoid his arbitration obligations.  The agreements are otherwise substantially similar and Caparra makes no arguments regarding the unenforceability of the agreement signed in 2004.  For these reasons, the Court considers only the agreement signed on April 27, 2012.

> *claims or disputes arising out of or in connection with employment, terms and conditions of employment, or the termination of employment with Brinker will be resolved by binding arbitration instead of in a court of law or equity.* This agreement applies to all disputes involving legally protected rights (e.g., local, state and federal statutory, contractual or common law rights) regardless of whether the statute was enacted or the common law doctrine was recognized at the time this agreement was signed. This agreement does not limit an employee's ability to complete any external administrative remedy (such as with the EEOC).
>
> This Agreement to Arbitrate substitutes one legitimate dispute resolution form (arbitration) for another (litigation), thereby waiving any right of either party to have the dispute resolved in court. *This substitution involves no surrender, by either party, of any substantive statutory or common law benefits, protection or defense for individual claims.* You do waive the right to commence or be party to any representative, collective or class action.
>
> Arbitration Rules
>
> . . . Each party is entitled to representation by an attorney throughout the arbitration proceeding at their own expense. Each party shall bear their own fees and expenses, unless otherwise awarded by the arbitrator in the final, written decision.
>
> . . . The arbitrator may award individual relief only. . .

(Defs.' Mot. Dismiss Ex. G; Pl.'s Opp'n Mot. Dismiss Ex. 1) (emphasis added). The Arbitration Agreement also sets forth where the arbitration proceeding will occur, the process to initiate arbitration, and additional procedural rules. (*See id.*)

## II.     Legal Standard For a Motion to Compel Arbitration

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") evinces Congress' liberal policy favoring arbitration agreements.[4] *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Pursuant to Section 2 of the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

---

[4]     All parties agree that the FAA governs this dispute.

revocation of any contract." 9 U.S.C. § 2. "Agreements to arbitrate employment disputes, whether based on federal or state statutory claims, are enforceable under the [FAA]." *Hudyka v. Sunoco, Inc.*, 474 F. Supp. 2d 712, 715 (E.D. Pa. 2007) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001)). "A district court is authorized to compel arbitration if a party to an arbitration agreement institutes an action that involves an arbitrable issue and one party to the agreement has failed to enter arbitration." *Harris v Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999).

The Third Circuit Court of Appeals recently clarified the standard by which a district court must review a motion to compel arbitration:

> [W]hen it is apparent, based on the face of the complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks and citations omitted). Because the complaint did not make clear that the parties' dispute was subject to arbitration and Caparra asserted in response to Defendants' initial motion that the agreement to arbitrate was unconscionable, the Court ordered limited discovery on the issue. After completing discovery, Defendants filed a renewed motion to dismiss and to compel arbitration pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court must, however, entertain the renewed motion to compel under a summary judgment standard.

Under a summary judgment standard, a court will grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a summary judgment motion, we consider "the facts and draw all reasonable inferences in the light most favorable to the plaintiff, the party who opposed summary judgment." *Lamont v. New Jersey*, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).  "The party seeking to compel arbitration bears the initial burden of showing that the non-movant has failed to establish one or more essential elements of its case.  If it meets this burden, the party seeking to avoid arbitration must point to specific facts in the record that demonstrate that there is a genuine issue for trial."  *Porreca v. Rose Grp.*, No. 13-cv-1674, 2013 WL 6498392, at *6 (E.D. Pa. Dec. 11, 2013) (citing *Guidotti*, 716 F.3d at 773)).

### III.  Discussion

"Because arbitration is a matter of contract, before compelling arbitration pursuant to the [FAA], a court must determine that (1) an enforceable agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement."  *MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 734 (E.D. Pa. 2013) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).  Caparra challenges only the enforceability of the Arbitration Agreement, contending that (1) that the agreement is invalid because it is not supported by consideration, and (2) that the agreement is unenforceable because it is unconscionable.  The Court considers the arguments in turn.

#### a.  *Validity of the Arbitration Agreement*

"To determine whether the parties have agreed to arbitrate, we apply ordinary state-law principles that govern the formation of contracts."  *Century Indem. Co. v. Certain Underwriters*

6

*at Lloyd's London*, 584 F.3d 513, 524 (3d Cir. 2009) (citations omitted).  The parties agree that Pennsylvania contract principles apply.  To determine whether a contract was formed under Pennsylvania law, a court must look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration.  *Id.* at 533.  "Pennsylvania contract law assigns to the party seeking arbitration 'the burden of demonstrating that a valid agreement to arbitrate exists between the parties."  *Swartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007) (quoting *Goldstein v. Depository Trust Co.*, 717 A.2d 1063, 1067 (Pa. Super. Ct. 1998)).

Caparra contends only that the Arbitration Agreement is not supported by consideration.  "Consideration confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise."  *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 299 (3d Cir. 1986) (citation omitted).  The Arbitration Agreement states that Brinker Payroll "has provided for the resolution of all disputes that arise between you and Brinker through formal, mandatory arbitration before a neutral arbitrator."  This language makes clear that Caparra and Brinker Payroll mutually agreed to forgo litigation and to arbitrate all disputes covered by the agreement.  "When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603-04 (3d Cir. 2002).  The Arbitration Agreement is supported by consideration, and is thus a valid contract.

    b.  <u>*Unconscionability*</u>

Caparra also contends that the Arbitration Agreement is unconscionable and thereby unenforceable. (Pl.'s Opp'n Mot. Dismiss 12.)  "To prove unconscionability under Pennsylvania law, a party must show that the contract was both substantively and procedurally

7

unconscionable." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (citing *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007)). "[T]he Pennsylvania Supreme Court has indicated that it might be appropriate to use a 'sliding scale approach' so that where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required and presumably, vice-versa." *Quilloin*, 673 F.3d at 230 (citation omitted). This "sliding scale approach" does not, however, eliminate a party's obligation to demonstrate the existence of both procedural and substantive unconscionability. *See Porreca*, 2013 WL 6498392, at *16 (citing *Quilloin*, 673 F.3d at 230). "[T]he burden of establishing unconscionability lies with the party seeking to invalidate the contract, including an arbitration agreement . . ." *Salley*, 925 A.2d at 347.

Procedural unconscionability focuses on the process underlying the formation of the contract and the form and language of the agreement. *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 228 (3d Cir. 2008). A procedurally unconscionable contract is one marked by "a lack of meaningful choice in the acceptance of the challenged provision.'" *Quillion*, 673 F.3d at 236 (quoting *Salley*, 925 A.2d at 119). On the other hand "[a] contract or provision is substantively unconscionable where it 'unreasonably favors the party asserting it.'" *Id.* (quoting *Salley*, 925 A.2d at 119). "An arbitration agreement cannot be construed as substantively unconscionable where it 'does not alter or limit the rights and remedies available to [a] party in the arbitral forum. . . .'" *Quilloin*, 673 F.3d at 231 (quoting *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 364 (3d Cir. 2007)).

Caparra presents three reasons why the Arbitration Agreement is substantively unconscionable. First, Defendants failed to explain the terms of the Arbitration Agreement to him. (Pl.'s Opp'n Mot. Dismiss 19, 22.) Second, the Arbitration Agreement limits his ability to

8

recover equitable and injunctive relief available to him under the ADA, the FMLA and the PHRA.  (*Id.* at 23.)  Third, the Arbitration Agreement makes him bear his own fees and expenses.  (*Id.* at 24.)  Caparra also contends that the Arbitration Agreement is a procedurally unconscionable contract of adhesion.  (*Id.* at 14-19.)  Because the Court finds that the Arbitration Agreement is not substantively unconscionable, the Court need not determine whether the Agreement is procedurally unconscionable.

### i. *Substantive Unconscionability*

Caparra contends that the terms of the Arbitration Agreement are "'unreasonably or grossly favorable to one side' i.e., Defendants" because "a high-level director" David Kososki did not understand the meaning of many of the terms in the agreement.[5]  (*Id.* at 22.)  In support of this position Caparra quotes sections of Kososki's deposition where he admits that:  he does not know the difference between a legal claim or an equitable claim; he does not know what a court of equity is; he does not know what a statutory or common law benefit is; he does not know what the Federal Rules of Evidence or Rules of Civil Procedure are; and he does not know the meaning of the sentence, "The arbitrator may award individual relief only."  (*Id.* at 19-22.)  Caparra, like Kososki, does not understand the terms of the Arbitration Agreement, and "no one at Defendants ever made any effort to explain the Agreement to [him]."  (*Id.* at 22.)

Caparra failed to read the agreement and he did not raise any questions about its language before signing.  (*See* Caparra Dep. 98:13-103:1, 110:9-110:21.)  He contends that even if he had read the document, he would not have understood it.  (*Id.* at 111:19-111:24.)  Nevertheless, the terms of the agreement were clearly described in the document that Caparra received and signed.

---

[5] This argument, which challenges the procedure underlying the formation of the Arbitration Agreement, is a procedural unconscionability argument.  *See Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 265 (3d Cir. 2003) ("Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language.") (citation omitted).  The Court nevertheless considers it pursuant to Caparra's substantive unconscionability label.

Under Pennsylvania law, "[c]ontracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990). Caparra cites no law for the proposition that an arbitration agreement is unconscionable because his employer failed to explain its terms. To the contrary, there is "no additional requirement to conduct an orientation to discuss the terms of the agreement with the employee and ensure that the employee understands all of its terms." *Porreca*, 2013 WL 6498392, at *9; *see also Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 223 (3d Cir. 2008) (enforcing arbitration agreement drafted in English against non-English speaking employee who made no effort to learn the terms of the agreement). The Court cannot find the Arbitration Agreement substantively unconscionable because Caparra failed to understand its terms before he signed the document.

Caparra next contends that the Arbitration Agreement precludes him from seeking the equitable and injunctive relief he is entitled to under the ADA, the FMLA and the PHRA.[6] He is correct that he is entitled to seek such relief under those statutes. *See* 42 U.S.C. § 12117(a); 29 U.S.C. § 2617(a)(1)(B); 43 P.S. § 962(c)(3). He is incorrect, however, that the fact that the "arbitrator may award individual relief only" eliminates his right to these remedies. The Arbitration Agreement unequivocally states that the agreement "involves no surrender, by either party, of any substantive statutory or common law benefit, protection or defense for individual claims." The "individual relief" limitation refers to the class action waiver[7] in the Arbitration

---

[6] Caparra has asked the Court to "enjoin and permanently restraining [sic] the violations" and to grant "such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations." (Compl. at 12-13.)

[7] Caparra has not asserted a putative class action and he raises no challenges to the class action waiver in the Arbitration Agreement.

10

Agreement; it is not a limit on the remedies available to Caparra. Moreover, should some ambiguity between the rights available under the ADA, the FMLA or the PHRA and the language of the Arbitration Agreement arise, the "Supreme Court has clearly established that ambiguities in arbitration agreements must be interpreted by the arbitrator." *Quilloin*, 673 F.3d at 231 (citing *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406-07 (2003)). The Arbitration Agreement cannot be deemed substantively unconscionable on this basis.

Caparra appears (though only through parentheticals appended to case citations) to contend that requiring him to bear his own costs makes the arbitral forum prohibitively expensive, which renders the Arbitration Agreement substantively unconscionable. (Pl.'s Opp'n Mot. Dismiss 24.) An arbitration agreement that requires a claimant to bear prohibitive costs may be unconscionable because such costs could deter a litigant from effectively vindicating his rights. *See Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 203 (3d Cir. 2010); *Blair*, 283 F.3d at 605 ("[T]he existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum."). However, the mere risk that a party "will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). A party seeking to invalidate an arbitration agreement on such grounds bears the burden of showing the likelihood of incurring such costs. *Id*.

The Arbitration Agreement states "Each party shall bear their own fees and expenses, unless otherwise awarded by the arbitrator in the final, written decision." This plain language expressly provides the arbitrator the discretion to award Caparra fees and costs. The agreement places no limitations on the arbitrator's discretion to do so and, as discussed above, Caparra has not waived his right to recover fees, to the extent available, under the ADA, the FMLA or the

PHRA. *See* 42 U.S.C. § 12205; 29 U.S.C. § 2617(a)(3); 43 P.S. § 962(c)(4). Despite engaging in discovery directed at the unconscionability of the Arbitration Agreement, Caparra makes no attempt to show that he will have to bear his own costs or that he is unable to pay such costs.[8] "[T]he effect of the attorney fees provision . . . is, at this point, purely speculative." (Defs.' Mot. Dismiss Ex. O, *Johnson v. Brinker Int'l Payroll Co.*, No. 13-cv-1090, at 7 (W.D. Wash. Oct. 23, 2013) (interpreting an identical arbitration provision)). The Arbitration Agreement is not substantively unconscionable.

    ii. *Procedural Unconscionability*

Caparra contends that the Arbitration Agreement is a procedurally unconscionable contract of adhesion, which is a "'standard-form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms.'" *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1190 (Pa. 2010) (quoting Black's Law Dictionary 342 (8th ed. 2004)). Under Pennsylvania law, contracts of adhesion are usually found to be procedurally unconscionable. *Quilloin*, 673 F.3d at 235. Nonetheless, the absence of substantive unconscionability mandates the enforcement of the Arbitration Agreement, regardless of a finding of procedural unconscionability. *See Williams v.*

---

[8]  Caparra's citations to *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191 (3d Cir. 2010) and *Parilla v. IAP Worldwide Services VI, Inc.*, 368 F.3d 269 (3d Cir. 2004) lend no support to his argument. In *Nino*, the Third Circuit held that an arbitration provision that stated "that the fees and expenses of the arbitrator and stenographer are to be borne equally by the parties" was substantively unconscionable because its restriction on the arbitrator's ability to award attorney's fees, costs and expenses "undermine[d] the legislative intent behind fee-shifting statutes like Title VII." *Nino*, 609 F.3d at 203. The Arbitration Agreement in this case does not contain a similar restriction. Similarly, the provision in *Parilla* required each party to "bear its own costs and expenses, including attorney's fees." *Parilla*, 368 F.3d at 278-79. The Third Circuit held that the relinquishment of eligibility for costs, expenses and attorney's fees "clearly helps the employer" and is thus substantively unconscionable. *Id.* at 278. Caparra, however, has not relinquished his eligibility for costs, expenses and attorney's fees under the ADA, the FMLA or the PHRA. The arbitration agreement in *Parilla* also required the employee to reimburse the company for the arbitrator's fees and expenses if so directed by the arbitrator. *Id.* at 283. While noting that "the prospect that the employee may have to pay the entire amount of the arbitrator's fees and expenses may serve to chill her willingness to bring a claim," the court remanded the case to permit the employee to conduct limited discovery in an effort to demonstrate her inability to pay the anticipated costs of arbitration. *Id.* at 284-85. The Arbitration Agreement here does not saddle Caparra with a similar obligation. And even if it did, Caparra puts forth no evidence regarding his inability to pay such fees.

*Nabors Drilling USA, LP*, No. 13-cv-1013, 2014 WL 710078, at *9 (W.D. Pa. Feb. 25, 2014) ("[B]ecause the Employees failed to show substantive unconscionability, procedural unconscionability is irrelevant. The Arbitration Agreement must be enforced."); *accord Zimmer*, 523 F.3d at 230 ("Because we have concluded that the arbitration agreement here was not procedurally unconscionable and reverse on that basis, we need not decide whether the District Court's decision as to substantive unconscionability was correct."). Put another way, even if the Court, after considering the record evidence and applying the sliding scale approach, found the Arbitration Agreement was procedurally unconscionable, it would still enforce the Arbitration Agreement. Therefore, the Court need not take up Caparra's procedural unconscionability arguments.

    c. <u>Scope of the Arbitration Agreement</u>

  Because an enforceable arbitration agreement exists, the Court must determine whether the dispute falls within the scope of the agreement. *See MacDonald*, 951 F. Supp. 2d at 734. "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83(1960)). This presumption is "particularly applicable where the clause is broad." *Id.* Accordingly, "if the allegations underlying the claims touch matters covered by an arbitration clause in a contract, then those claims must be arbitrated." *Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 626 (3d Cir. 2003) (internal quotation marks and citation omitted). The parties agreed to arbitrate "any legal or equitable claims or

disputes arising out of or in connection with employment, terms and conditions of employment, or the termination of employment . . ." This broad language clearly encompasses Caparra's ADA and PHRA discrimination claims as well as his FMLA interference and retaliation claims. Caparra makes no argument to the contrary. The Court accordingly finds that the Arbitration Agreement is a valid, enforceable contract requiring Caparra to arbitrate the claims set forth in his complaint.

        d.   *Claims Against Brinker International and Maggiano's Must Also Be Arbitrated*

Finally, Caparra asserts that he cannot be compelled to arbitrate his claims against Brinker International and Maggiano's because they did not sign the Arbitration Agreement. (Pl.'s Opp'n Mot. Dismiss 6-10.) Even assuming that Caparra was employed by one or both of these entities—as he contends—his joinder of these defendants does not mandate the conclusion that he need not arbitrate his claims against them.

A non-signatory to a contract may bind a signatory to arbitrate a dispute when "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotation marks omitted). "In the wake of *Arthur Anderson* . . . we must expressly consider whether the relevant state contract law recognizes the particular principle as a ground for enforcing contracts by or against third parties." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (internal quotation marks omitted).

Pennsylvania law embraces the theory of equitable estoppel. *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014) (citing *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351 (Pa. Super. Ct. 2006)). Under *Dodds*, "[n]on-signatories to an arbitration agreement can enforce

14

such an agreement when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties." 909 A.2d at 351. The *Dodds* plaintiffs signed an arbitration agreement with Pulte Home Corporation of the Delaware Valley ("Pulte Home") and agreed that "any controversy, claim or dispute arising out of or relating to this Agreement or purchase of the Home . . . shall be settled by arbitration." *Id.* at 350. The plaintiffs asserted a fraud claim against Pulte Home's parent company, who had not signed the arbitration agreement, in an effort to avoid arbitration. *Id.* at 351. Because the interests of the parent company were the same as Pulte Home, the *Dodds* plaintiffs could not avoid the arbitration agreement by asserting a fraud claim against the parent company. *Id.* at 352.

      Here, Caparra lumps together non-signatory affiliated entities, Brinker International and Maggiano's, with signatory affiliated entity Brinker Payroll, and alleges that the Defendants are collectively liable as his employer. (*See, e.g.*, Compl. ¶¶ 23, 41, 42, 43, 44, 46, 47, 48, 49.) Caparra's claims against the Defendants are indistinguishable as they stem from the same incident and implicate identical legal principles. Permitting simultaneous litigation and arbitration of these identical claims runs the risk of different fact finders interpreting identical fact patterns differently and unnecessarily wastes judicial resources. *See Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1272 (Pa. Super. Ct. 2004) ("[I]n disputes involving identical facts, we have an interest in obtaining consistent results and avoiding an unnecessary waste of resources."). Moreover, Caparra, a signatory to the arbitration agreement, "should not be able to avoid the requirement to arbitrate by a non-signatory when the non-signatory *wants* to arbitrate." *Dodds*, 909 A.2d at 352; *see also Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1112 (3d Cir. 1993) (holding that claims against non-signatory "corporate sister" of signatory corporation fell within the scope of an arbitration agreement because plaintiff's theory of liability

15

demonstrated that corporate sister's interests were "directly related to, if not predicated upon" the alleged wrongful conduct). Any other result would permit a party to "obviate the effect of the agreement merely by finding a way to join another party." *Dodds*, 909 A.2d at 352*; see also Arnold v. Arnold Corp.-Printed Commc'ns For Bus.*, 920 F.2d 1269, 1281 (6th Cir. 1990) ("[I]f appellant can avoid the practical consequences of an agreement to arbitrate by naming non-signatory parties as defendants in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified.") (internal quotation marks omitted). The Court accordingly finds that Caparra must arbitrate his claims against Brinker International and Maggiano's.

### IV.    Conclusion

The FAA directs that if a case referable to arbitration is brought in federal court, the court before which the lawsuit is pending "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. This section "affords district courts no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004). Defendants move to dismiss the complaint; they did not request a stay. Nevertheless, Caparra appears to request a stay in opposition to the Defendants' motion. (*See* Pl.'s Opp'n Mot. Dismiss 25.) A stay furthers both the Defendants' interests in compelling arbitration and judicial economy. *See Lloyd*, 369 F.3d at 270 (noting that entering a stay expedites judicial resolution of disputes for which the parties are entitled to seek the Court's assistance during arbitration and ensures that the parties proceed immediately to arbitration). Accordingly, this case will be stayed, and administratively closed, pending the resolution of arbitration. *Cf. Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474,

490 (E.D. Pa. 2011) (dismissing case because "neither plaintiffs nor defendants have requested that we stay the action pending arbitration").

An appropriate Order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J